UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| EDWARD WALLACE, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 22-cv-2275-JBM |
| KIM LARSON, *et al.*, | ) |
| Defendants. | ) |

## MERIT REVIEW ORDER

Plaintiff, proceeding *pro se*, files a Complaint under 42 U.S.C. § 1983 alleging that Defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment while he was incarcerated at Danville Correctional Center ("Danville"). The case is before the Court for a merit review pursuant to 28 U.S.C. § 1915A. In reviewing the Complaint, the Court accepts the factual allegations as true, liberally construing them in Plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 649-51 (7th Cir. 2013). However, conclusory statements and labels are insufficient. Enough facts must be provided to "state a claim for relief that is plausible on its face." *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013) (citation and internal quotation marks omitted). While the pleading standard does not require "detailed factual allegations," it requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## FACTS

In disclosing his prior litigation history, Plaintiffs failed to disclose a virtually identical complaint filed in *Wallace v. Larson, et al.*, No. 21-2064 (C.D. Ill. 3/25/2021). (Doc. 1 at 3). In that case, the Court dismissed Plaintiff's complaint at merit review with leave to replead. When

1

Plaintiff failed to file an amended complaint, the matter was dismissed without prejudice. Plaintiff now files the instant Complaint, reasserting the claims pled in the prior case.

In his Complaint, Plaintiff names the following Defendants: Danville warden Kim Larson, nurse Darcey Davis, nurse practitioner Justin Dupri, Dr. Young, and Wexford Health Sources, Inc. ("Wexford").

Plaintiff claims that on December 19, 2020, he tested positive for COVID-19 and was moved to a higher-tier cell. Later that evening, Plaintiff asked Defendant nurse Davis about being housed on an elevated level given his epileptic condition. Defendant Davis told Plaintiff that epilepsy did not mandate placement in a lower-tier cell. Plaintiff claims that his request to be housed on a lower tier for his "safety" was denied. *Id.* at 6. Defendant Davis advised Plaintiff to put in for sick call to see a physician. Plaintiff did as she advised. He does not elaborate further regarding his contact with the physician.

On the evening of January 2, 2021, Plaintiff experienced chest pain, a severe headache, dizziness, and shortness of breath. Plaintiff pressed the emergency button in his cell, and a medical team led by Defendant Davis responded. Plaintiff told the medical team about his symptoms and that he had diabetes, epilepsy, hypertension, and had tested positive for COVID-19. After checking Plaintiff's breathing and blood oxygen level, Plaintiff received throat lozenges and "tablets" and returned to his cell. *Id.* at 7. He alleges that the medication did not alleviate his symptoms.

At about 11 p.m. that evening, Plaintiff again used the emergency button and told the responding unidentified correctional officer about his symptoms. The officer advised Plaintiff to seek medical attention by signing up for sick call in the morning.

On the morning of January 3, 2021, Plaintiff again used the emergency button, but no one answered. During lunch pass that day, Plaintiff informed officer John Doe, who is not named as a

Defendant, about his symptoms. Officer Doe advised Plaintiff to sign up for sick call. Plaintiff reminded officer Doe that the facility was on a high-level lockdown. Officer Doe responded that he would bring the sick call sheet to Plaintiff, but he did not.

Plaintiff asserts that after a shift change on January 3, 2021, he told Jane Doe, who is not named as a Defendant, about his ongoing symptoms. Jane Doe advised Plaintiff to sign up for sick call when the nurse arrived for med pass. Plaintiff does not state what action, if any, he took in response.

About 8 p.m. that evening, Plaintiff was walking down a flight of stairs to receive his evening medication when he experienced an epileptic seizure caused by dizziness, chest pains, shortness of breath, and a severe headache that had intensified. As a result, Plaintiff fell down the stairs and was injured. Plaintiff was taken to the local hospital for treatment.

Due to the fall, Plaintiff claims that he suffers from "severe spinal pain, echoing of the ears, intense back spasms, possible nerve damage to [his] neck and lower back[,] and double vision." *Id.* at 8. After the fall, Defendant Dr. Young issued a lower gallery and bunk permit. Defendant nurse practitioner Dupri signed the permit. Plaintiff states that an x-ray confirmed the unusual vertebrae placement and that he was given medication for pain in his "back/spinal areas." *Id.* at 9.

Plaintiff claims that Defendants were "well aware" of his previous epileptic seizures and knew he was at high risk for COVID-19, his present symptoms, and symptoms he could have developed. *Id*. Plaintiff alleges in a conclusory fashion that Danville's medical team did not properly follow the CDC and IDOC health and safety guidelines and procedures for prison inmates who were at high risk for COVID-19. He does not elaborate further.

## ANALYSIS

To plead an Eighth Amendment claim for deliberate indifference to a serious medical need, a complaint must allege (1) an objectively serious medical condition and (2) a prison official's deliberate indifference to that condition. *Johnson v. Snyder*, 444 F.3d 579, 584 (7th Cir. 2006). A medical need is objectively "serious" where it has either "been diagnosed by a physician as mandating treatment" or where the need is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997). To establish deliberate indifference, a plaintiff "must demonstrate that prison officials acted with a 'sufficiently culpable state of mind.'" *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005) (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). "[I]t is enough to show that the defendants knew of a substantial risk of harm to the inmate and disregarded the risk." *Greeno*, 414 F.3d at 653 (citing *Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir. 2002)).

The Court concludes that Plaintiff's allegations are insufficient to state a deliberate indifference claim against Defendants. First, Plaintiff's Complaint is devoid of any allegations against Defendant warden Larson. Plaintiff pleads in a conclusory fashion that all Defendants failed to follow CDC and IDOC guidelines related to COVID-19 and that they were aware of his epilepsy and the symptoms he was experiencing due to COVID-19; however, these allegations are insufficient to establish a constitutional claim against Defendant Larson. "[T]o be liable under [Section] 1983, an individual defendant must have caused or participated in a constitutional deprivation." *Pepper v. Vill. of Oak Park,* 430 F.3d 809, 810 (7th Cir. 2005) (citations omitted). There is no *respondeat superior* culpability under § 1983. If state prison officials are named, they must be named in their individual capacities, and Plaintiff must allege that the official personally participated in the deprivation or was deliberately reckless as to the misconduct of subordinates or

was aware and condoned, acquiesced, or turned a blind eye to it. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001). There are no such allegations in Plaintiff's Complaint. Additionally, as a non-medical prison official, Defendant Larson is entitled to rely on the opinions of medical staff. *See Hayes v. Snyder*, 546 F.3d 516, 527 (7th Cir. 2008); *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004) ("If a prisoner is under the care of medical experts … a non-medical prison official will generally be justified in believing that the prisoner is in capable hands.").

Regarding Defendant nurse Davis, Plaintiff claims that he asked her about being housed on a lower level due to his epileptic condition. Defendant Davis allegedly told Plaintiff that epilepsy did not mandate placement in a lower-tier cell and advised him to put in for sick call to see a physician. Plaintiff's account does not establish or permit the inference that Defendant Davis knew of but disregarded a substantial medical risk. Plaintiff also alleges that Defendant Davis was part of a medical team that provided him care to address his COVID-19 symptoms on January 2, 2021. Plaintiff claims that the treatment provided was ineffective, but this is insufficient to state a constitutional violation. *See Gutierrez*, 111 F.3d at 1374 ("[M]edical malpractice in the form of an incorrect diagnosis or improper treatment does not state an Eighth Amendment claim."); *see also Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003) (stating that a plaintiff's "disagreement with medical professionals about his needs . . . does not state a cognizable Eighth Amendment claim").

Regarding Defendants Dr. Young and nurse practitioner Dupri, Plaintiff claims that they issued a low gallery and bunk permit only after he fell. Any implication that they should have issued a permit sooner or that they might somehow have prevented Plaintiff's fall is unsupported by the allegations. Plaintiff does not allege that Defendants were aware that he needed a low

bunk/low gallery permit prior to the fall and failed to issue a permit. In other words, there is no indication that Defendants Young and Dupri knew of and disregarded a substantial medical risk.

Plaintiff also names Wexford as a Defendant, but he does not include any allegations related to Wexford in his Complaint. Under Federal Rule of Civil Procedure 8(a), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "This requirement is satisfied if the complaint (1) describes the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests and (2) plausibly suggests that the plaintiff has a right to relief above a speculative level." *Bravo v. Midland Credit Mgmt.*, 812 F.3d 599, 601-02 (7th Cir. 2016) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Defendant Wexford can be held liable under § 1983 based on (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a governmental practice or custom that, although not officially authorized, is widespread and well settled as to constitute a custom or usage with the force of law; or (3) a constitutional injury caused by a person with final policy making authority. *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010); *see also Woodward v. Corr. Med. Servs. of Ill., Inc.*, 368 F.3d 917, 927-28 (7th Cir. 2004) (stating that the standard for municipal liability in *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), applies to corporations as well). Plaintiff's Complaint includes no such allegations.

Accordingly, Plaintiff's Complaint is dismissed with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6) and 28 U.S.C. § 1915A for failure to state a claim upon which relief may be granted. Dismissal with prejudice is appropriate, as the instant Complaint reasserts identical claims pled in an earlier case, *Wallace v. Larson, et al.*, No. 21-2064 (C.D. Ill. 3/25/2021), which was dismissed at merit review with leave to replead. Plaintiff failed to file an amended complaint,

and the case was dismissed without prejudice on December 21, 2021. Judgment was entered on December 22, 2021. Rather than filing an amended complaint in his prior case, Plaintiff has now re-pled identical claims in his instant Complaint filed on December 21, 2022. It is the Court's judgment that the instant Complaint is tantamount to an amendment of the complaint previously filed in *Wallace v. Larson, et al.* and should reflect efforts by Plaintiff to re-plead his claims to overcome dismissal. Having failed to do so, the Court finds that dismissal with prejudice is appropriate as any further amendment would be futile. There is no good basis in fact for Plaintiff to plead plausible claims against the named Defendants, or he would have done so in the instant Complaint.

**IT IS THEREFORE ORDERED:**

1) Plaintiff's Complaint is dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(6) and 28 U.S.C. § 1915A for failure to state a claim upon which relief may be granted. The Court finds that any amendment would be futile. This case is closed. The Clerk of Court is directed to enter a judgment pursuant to Fed. R. Civ. P. 58.

2) This dismissal shall count as one of Plaintiff's three allotted strikes pursuant to 28 U.S.C. § 1915(g). The Clerk of Court is directed to record Plaintiff's strike in the three-strike log.

3) Plaintiff must still pay the full docketing fee of $350 even though his case has been dismissed. The agency having custody of Plaintiff shall continue to make monthly payments to the Clerk of Court, as directed in the Court's prior Order. (See d/e 1/5/2023).

4) If Plaintiff wishes to appeal this dismissal, he must file a notice of appeal with this Court within 30 days of the entry of judgment. Fed. R. App. P. 4(a). A motion for leave to appeal *in forma pauperis* should set forth the issues Plaintiff plans to present on appeal. Fed. R. App. P.

24(a)(1)(C). If Plaintiff chooses to appeal, he will be liable for the $505 appellate filing fee irrespective of the outcome of the appeal.

ENTERED: 1/26/2023

s/ Joe Billy McDade
Joe Billy McDade
United States District Judge
